IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| ANTHONY T. LEE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Intervenor | ) | |
| and Amicus Curiae, | ) | |
| | ) | |
| NATIONAL EDUCATION | ) | CIVIL ACTION NO. |
| ASSOCIATION, INC., | ) | 2:70cv846-T |
| | ) | (WO) |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MACON COUNTY BOARD OF | ) | |
| EDUCATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

This longstanding desegregation case is before the

court on a motion to intervene filed by certain parents

and members of the South Macon community who oppose the

closing of South Macon School in Macon County, Alabama.

For the following reasons, the motion will be denied.

A.

The Macon County Board of Education has filed a petition with this court requesting expedited approval to close  two schools (South Macon School and Washington Public Elementary  School) and to open a new school (George Washington Carver Elementary School).  As support for its request, the  school board notes that it has experienced declining enrollment, as well as continual environmental, maintenance, and safety problems with the sewage treatment plant that services South Macon School. It states that "it is no longer cost effective for the Board to continue expending thousands of dollars in maintenance expenses and exposing the district to possible fines for environmental violations in the operation of this sewage treatment plant."[1]  The racial

_____

1.  Petition for expedited approval (Doc. No. 74), p. 2.  In addition, during a telephone status conference on August 2, 2005, the school board informed the court that the State has provided it with funding to create a new facility, but will not fund the renovation of older
(continued...)

2

composition of each of these schools is 100 percent

African-American.[2]

The movant-intervenors subsequently filed a motion

to intervene opposing the closure of South Macon School,

arguing that they are entitled to intervene as of right

pursuant to Fed. R. Civ. P. 24(a)(2) because they have "a

special interest in having their children attend a school

that is near to their neighborhood in Macon County,

Alabama, and they have a special interest in obtaining a

quality education for their children in their

neighborhood school."[3]    Alternatively, they seek

permissive intervention under Rule 24(b)(2).[4]

In support of their motion, the movant-intervenors

state, among other things, that the Macon County Board of

---

1.   (...continued)
buildings.

2.   <u>Id</u>.

3.   Motion to intervene (Doc. No. 78), p. 2.

4.   <u>Id</u>. at 5.

Education has denied them adequate facilities, equipment and materials.  They also take issue with the fact that the school bard intends to bus their children to the City of Tuskegee, which is over 20 miles from most of their homes.[5]  They argue that the length of the round-trip bus ride alone will have a detrimental impact on their children's education and health, citing a Canadian study on the detrimental effects of long distance busing of young children.[6]  In addition, they object to the school board's proposed interim arrangement if the new George Washington Carver Elementary School is not ready for the start of the 2005-2006 year, which involves temporarily housing the children who formerly attended South Macon School at Washington Public School.  The movant-intervenors claim that this proposal will result in the housing of some South Macon students in portable

---

5.  Id. at 4.

6.  Brief in support of motion to intervene (Doc. No. 92), p. 9.

4

classrooms, which have been outlawed by the State of
Alabama and is hazardous to the children's health.[7] They
further note that South Macon School has better test
scores than any other school in the county and is the
only school that has been "academically clear" each year
since the Alabama State Board of Education has been
monitoring the schools in the Macon County School
District.[8] Finally, the movant-intervenors complain that
the Macon County Board of Education did not allow them
adequate due process to voice their complaints before
deciding to shut the schools down and has been
unresponsive to their concerns.[9]

A number of the parents who submitted affidavits in
support of the motion to intervene state that they live
more than 20 miles from Tuskegee and do not want their

---

7.  Id. at 7.

8.  Motion to intervene (Doc. No. 78), p. 5-6.

9.  Brief in support of motion to intervene (Doc. No. 92), p. 6.

children bussed to schools so far away from their home.
In addition, many of the parents have expressed concern
that the schools in Tuskegee are known to have problems
with fighting, drugs and "sexual misconduct," which South
Macon does not, and have stated that they do not want
their children exposed to these negative influences in
Tuskegee.[10]


                              B.

     The movant-intervenors seek to intervene in this
case as a matter of right pursuant to Fed. R. Civ. P.
24(a)(2), and alternatively, permissively, pursuant to
Fed. R. Civ. P. 24(b)(2).[11]

_____

     10.  Id., Exs. 1-6.

     11.  Fed. R. Civ. P. 24(a)(2) states, in relevant
part, that anyone shall be permitted to intervene in an
action upon timely application,

          "when the applicant claims an interest
          relating to the ... transaction which is
          the subject of the action and the
          applicant is so situated that the
                                        (continued...)

The former Fifth Circuit, now the Eleventh Circuit,

has developed a specific standard by which district

courts may permit intervention of parents in school

desegregation cases.  Specifically, the court has held

that parents seeking to intervene in school desegregation

cases, whether of right or permissively, "must

demonstrate an interest in a desegregated school system."

United States v. Perry Co. Board of Ed., 567 F.2d 277

(5th Cir. 1978) (citing Hines v. Rapides Parish School

Board, 479 F.2d 762, 765 (5th Cir. 1973).[12]  In addition,

_____

11.  (...continued)
    disposition of the action may as a
    practical matter impair or impede the
    applicant's ability to protect that
    interest, unless the applicant's interest
    is adequately represented by existing
    parties."

Fed. R. Civ. P. 24(b)(2) provides for permissive
intervention upon timely application where "an applicant's
claim or defense and the main action have a question of law
or fact in common."

12.  In Bonner v. City of Prichard, 661 F.2d 1206,
1209 (11th Cir. 1981) (en banc), the Eleventh Circuit
adopted as binding precedent all of the decisions of the
                                        (continued...)

7

a petition for intervention must bring to the court's attention "the precise issues which the new group [seeks] to represent and the ways in which the goal of a unitary system [has] allegedly been frustrated." Hines, 470 F.2d at 765.   See also Bradley v. Pinellas County School Board, 961 F.2d 1554, 1556 (11th Cir. 1992).

In this case, the movant-intervenors have failed to assert such an interest.  Nowhere in their motion to intervene, supporting brief, or proposed complaint in intervention do they argue that the Board's proposal threatens their interest in a desegregated school system, or that the Board's proposal would decrease desegregation in the Macon County School District.[13]   Rather, their

---

12.   (...continued)
former Fifth Circuit handed down prior to the close of business on September 20, 1981.

13.   During the August 2, 2005 telephone status conference, the movant-intervenors did note that the school board is proposing to close down two 100 % African-American schools, rather than the only racially integrated school in the district, Notasulga High School. They further argued that the board has directed more
(continued...)

8

stated interest is ensuring that their children receive a quality education at a school with adequate resources close to their own community.  While this is certainly a valid concern that might be litigated elsewhere, such an interest does not provide a basis for the court to allow the movant-intervenors to intervene, either as of right or permissively, in this school desegregation case.

_____

13.  (...continued)
resources to Notasulga High School than to South Macon School, even though Notasulga has fewer students, and queried why the board did not contemplate closing down Notasulga instead of South Macon.  However, the fact that the school board has chosen to close down two all African-American schools rather than a school with a more integrated student population is not evidence that the board is acting to frustrate the goal of a unitary school system.  If indicative of anything at all, such evidence suggests that the board is attempting to act in furtherance of that goal; indeed, it appears that, for this very reason, the Macon County School Board could not close Notasulga High School even if it wanted to.  See Lee v Macon County Bd. of Educ., 970 F.2d 767 (11th Cir. 1992) (affirming "district court's order den[ying] the petition of the Macon County Board of Education to close grades nine through twelve at Notasulga High School, the county's only nonracially identifiable school"), rehearing granted and opinion vacated, 987 F.2d 1521 (11th Cir. 1993), on rehearing, 995 F.2d 184 (11th Cir. 1993) ("court, sitting en banc, affirms the judgment of the district court by an equally divided vote").

9

Furthermore, even if the movant-intervenors had asserted an adequate interest in the desegregation of the Macon County School District, they have not presented any evidence that the current plaintiffs as well as plaintiff-intervenors United States of America and National Education Association, Inc. cannot adequately represent that interest.

Accordingly, it is ORDERED that the movant-intervenors' motion to intervene (Doc. No. 78) is denied.

DONE, this the 5th day of August, 2005.

_____ /s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE