IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| ANTHONY T. LEE, et al., | ) |
| Plaintiffs, | ) |
| UNITED STATES OF AMERICA, | ) |
| Plaintiff - Intervenor and Amicus Curiae, | ) |
| NATIONAL EDUCATION ASSOCIATION, INC., | ) |
| Plaintiff-Intervenor | ) |
| v. | ) |
| LEE COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-845-MHT |
| MACON COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-846-MHT |
| RUSSELL COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-848-MHT |
| TALLAPOOSA COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-849-MHT |
| ALEXANDER CITY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-850-MHT |
| AUBURN CITY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-851-MHT |
| OPELIKA CITY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-853-MHT |
| PHENIX CITY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-854-MHT |
| ROANOKE CITY BOARD OF EDUCATION | ) CIVIL ACTION No. 3:70-cv-855-MHT |
| BUTLER COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 2:70-cv-3099-MHT |
| COVINGTON COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 2:70-cv-3102-MHT |
| ELMORE COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 2:70-cv-3103-MHT |
| CRENSHAW COUNTY BOARD OF EDUCATION | ) CIVIL ACTION No. 2:66-cv-2455-MHT |
| Defendants. | |

CONSENT DECREE

INTRODUCTION

1. This consent decree arises out of the good faith efforts of all the parties to address and resolve the statewide issue of facilities. This agreement is jointly entered into by the United

States, the private plaintiffs, and the Alabama State Board of Education, all parties to the litigation styled Lee v. Macon County Board of Education.

## PROCEDURAL HISTORY

2.      This action is part of a statewide action that began when a class of black students and their parents sought relief from the continued operation of a racially segregated school system by the Macon County Board of Education. On July 16, 1963, the United States was added as Plaintiff-Intervenor and Amicus Curiae in order that the public interest in the administration of justice would be represented. On February 3, 1964, a supplemental complaint was filed alleging that the State Superintendent, the State Board of Education, its members, and the Governor[1] as president of the state board had asserted general control and supervision over all public schools in Alabama in order to maintain a *de jure* segregated school system based on race. The court found that it was the policy of the State to promote and encourage a dual school system based on race, and the state officials were made defendants. Lee v. Macon County Bd. of Educ., 231 F. Supp. 743 (M.D. Ala. 1964) (three-judge court) (per curiam).

3.      In 1967, the Court determined that the state defendants had engaged in a wide range of activities in the day-to-day performance of their duties in the general supervision and operation of the public school system that were designed to maintain segregated public education throughout the State, including in the area of school construction and consolidation. These activities interfered with the orderly desegregation of the public schools in the state of Alabama.

---

[1] Collectively, the State of Alabama, the State Board of Education, and the named state officials are referred to as "state defendants."

Lee v. Macon County Bd. of Educ., 267 F. Supp. 458, 470-71 (M.D. Ala. 1967) (three-judge court) (per curiam). The Court fashioned a remedy that constrained statewide defendants' activities in several areas of their responsibilities to accomplish the discharge of the State's constitutional obligation to disestablish racially dual school systems that it had supported. Id. at 478.

4.  The State of Alabama, and particularly the defendant state officials, were charged, the Court held, with the affirmative constitutional duty to take whatever corrective action was necessary to disestablish such systems. Id. The state defendants were ordered to implement a plan designed to ensure a reasonable attainment of equal educational opportunities for all children in the state regardless of their race. Id at 479. The plan included restraints on the approval of school construction:

> Approval by the State Superintendent of Education of all sites upon which schools are to be constructed or existing facilities expanded shall be withheld if . . . construction will not, to the extent consistent with the proper operation of the school system as a whole, further the disestablishment of the state-enforced or encouraged public school segregation and eliminate the effects of past state-enforced or encouraged racial discrimination in the state's public school system. Id at 481.

5.  After the Court's decision in 1967, the local aspects of the Lee v Macon litigation were transferred to this Court and other federal district courts throughout this state. In addition, by that time, other local school desegregation cases had been filed throughout the state.

6.  As the many different lawsuits progressed in Alabama, the courts began addressing construction and facilities issues specific to the local systems, and the State did not actively participate in those cases. In fact, the local court supervision eventually led to questions

about what, if any, involvement the State should have in the cases descended from the original statewide Lee v. Macon case. In 1997, as part of this Court's effort to move the desegregation cases on its docket towards attainment of unitary status and termination, the Court answered those questions and reiterated that the state defendants remained party defendants in all the offshoot cases and continued to be subject to all outstanding orders and injunctions stemming from the statewide case. Lee v. Macon County Board of Educ., 963 F. Supp. 1122, 1124 (M.D. Ala. 1997). The Court further opined that the state defendants had not yet met their burden under Green v. County Sch. Bd. of New Kent County, 391 U.S. 430 (1968), Freeman v. Pitts, 503 U.S. 467 (1992), and Missouri v. Jenkins, 515 U.S. 70 (1995), of showing that school attendance, faculty, staff, transportation, extracurricular activities, and facilities were free from racial discrimination, that there had been full and satisfactory compliance with earlier orders, that retention of judicial control was not necessary or practical to achieve compliance with these orders or that they demonstrated to the public and to the parents and students of the once disfavored race, their good faith commitment to the whole of these orders. Lee, 963 F. Supp. at 1130, citing Freeman v. Pitts, 503 U.S. at 486.

7. After the Court's holding affirming the State's continued desegregation responsibilities, the Court ordered the parties to report on the status of all statewide issues. On July 31, 1998, following a period of discovery and analysis, the parties submitted a joint

statement to the Court, wherein the parties identified only two statewide issues that were yet unresolved. The two areas identified were (1) Special Education, and (2) Facilities.[2]

## BACKGROUND

8.  The state defendants have long had general responsibility over the construction, renovation and expansion of facilities in public school systems in Alabama. For many years preceding desegregation, the State Department of Education conducted periodic surveys of the Alabama School system. These surveys were used for the purpose of making "decisions and recommendations concerning the location, construction, consolidation, expansion and abandonment of schools and school buildings." Lee v. Macon, 267 F. Supp. at 470. The State Superintendent of Education must approve new construction or renovation of school facilities. Ala. Admin Code § 290-2-2-01(1). Further, the education provisions of the Administrative Code require that the Alabama Building Commission laws, rules, regulations, and applicable standards for elementary and secondary public school construction shall be followed. Ala. Admin. Code §290-2-2-02(1).

9.  More recently enacted legislation requires each local board of education to "develop a comprehensive, long range capital plan addressing the facility, educational technology and equipment needs of the local board of education, pursuant to the rules adopted by the State Board of Education. The goal of this program is to have each local board of education

---

[2] A consent order resolving issues related to special education, including gifted programs, was approved on August 30, 2000 and remains in effect. Resolution of the facilities issue was delayed, in part, by ongoing litigation in state court involving school funding methods, which had a facilities component. Siegelman v. Alabama Ass'n of Sch. Bds., 819 So. 2d 568 (Ala. 2001).

complete its comprehensive, long range capital plan and begin making satisfactory progress in implementing the plan for providing adequate public school facilities for all students." Ala. Code § 16-13-234 (1975).[3]  The state has provided training and resource materials on capital planning and facilities assessment to local school systems.

10.    Since the state defendants have continuing obligations under the orders of this Court as well as ongoing responsibilities under state law, the parties believe that clarification of the state requirements will assist the State in demonstrating its good faith compliance with its desegregation obligations and elimination, to the extent practicable, of remaining vestiges of the dual system.  Additionally, the State will be able to demonstrate that it has established continuing specific policies and procedures demonstrating its good-faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for the State being brought into this litigation in the first instance. See Missouri v. Jenkins, 515 U.S. at 87-89.

## STATUS OF SCHOOL SYSTEMS

11.    Over the past three decades, this state has seen significant and meaningful progress toward desegregation as a result of the efforts of the private plaintiffs, the United States

---

[3] The program is called the Annual School Capital Planning Process (ASCPP).

Department of Justice, local boards of education and the State.[4] The process has been, at times, complicated, and the desegregation of public schools in Alabama has not been subject to a "one size fits all" approach. Instead, courts have methodically addressed problems specific to each system.

12. For the purposes of the requirements under this decree, the status of school systems is as follows: (1) Systems that have never been under a court desegregation order; (2) Systems that have achieved unitary status, and had their court orders terminated; (3) Systems that remain under court order, but have achieved partial unitary status and in which injunctions related to facilities have been terminated; (4) Systems that remain under court order, but have had the detailed regulatory injunctions dissolved and replaced with a permanent injunction that requires the system to affirmatively operate the system in a non-discriminatory manner; and (5) Systems that remain under court order and must comply with a court-ordered desegregation plan. This decree is limited to those systems described in (4) above, hereafter referred to as "Subsection 4" systems, and (5) above, hereafter referred to as "Subsection 5" systems.

---

[4] Several courts have referred to the construction approval process used by the State Department of Education. See Harris v. Crenshaw County Bd. of Educ., 968 F.2d 1090, 1092 (11th Cir. 1992) (school consolidation plan upheld, stressing early state designation of the site as "temporary"); Lee v. Geneva County Bd. of Educ., 892 F. Supp. 1387 (M.D. Ala. 1995) (upholding school consolidation proposal, emphasizing role of State in conducting an assessment and survey of district's facilities); Carr v. Montgomery County Bd. of Educ., 377 F. Supp. 1123 (M.D. Ala. 1974) (referencing requirement of obtaining state approval prior to any new school construction or expansion of existing facilities); see also United States v. Dallas County Comm'n, 548 F. Supp 794 (S.D. Ala. 1982) (voting rights case upholding at-large school board election, in which court noted that State Department of Education maintained a survey staff that assists local systems in analyzing and solving educational problems, and in particular, in creating equal educational opportunities for blacks and whites).

13. Those school systems that do not operate under court desegregation orders do not need to obtain court approval to proceed with a construction project, i.e., they have no desegregation plan related to facilities or student assignment which needs to be modified.

14. However, the parties agree that all Subsection 5 systems "have an affirmative duty to . . . render decisions that further desegregation and help to eliminate the effects of the previous dual school system, [and must] consider or include the objective of desegregation in decisions regarding the construction and abandonment of school facilities." Harris v. Crenshaw County Bd. of Educ., 968 F.2d 1090, 1094-95 (11th Cir. 1992).

15. Significantly, for reasons unrelated to desegregation efforts, all school systems are already required by Alabama law to obtain administrative approval from the State Department of Education for major construction projects.

## TERMS OF DECREE

16. The parties have devoted a considerable amount of time and energy crafting an appropriate remedy, which will address the obligations of the state defendants while affording appropriate respect and deference to current outstanding obligations of the school systems that are still under court supervision and without "reopening" facilities issues for those systems which have been granted unitary status. As a result, the parties agree that in order to finally resolve the statewide facilities issues portion of this lawsuit, during the term of this decree, the state defendants will assume certain obligations pertaining to the providing of training on

Alabama's history of school desegregation and pertaining to the collection and review of certain documentation from the local school systems.

17.   The parties agree that implementation of the components addressed herein shall fulfill the outstanding obligations of the State of Alabama, with respect to facilities and capital construction, to promote desegregation of all school systems in the State and to further the elimination of vestiges of past discrimination.

## I. TRAINING

18.   The State Department of Education currently provides one-time, comprehensive training and certification to capital planners in every school system who have the immediate or ultimate responsibility for the Annual School Capital Planning Process (ASCPP), which was designed by the State to provide a structured process, with objective, consistent components for planning school facilities. Ala. Code §§ 16-4-10, 16-13-12 (1975). Under the terms of this decree, the State Department of Education will develop a desegregation component to the ASCPP training. The Department will provide one-time training focused on this component to all local superintendents and all capital planners in Subsection 5 school systems, and will also notify non-Subsection 5 school systems of the availability of this training and permit local superintendents or capital planners from those systems to attend the training or view the videotape upon timely request.

19.   The purpose of the desegregation component will be to educate local administrators about the history of segregation in the state of Alabama and the related

desegregation decrees that effectuated the constitutional duty to eradicate the vestiges of discrimination, especially in the areas of new school construction and expansion. The obligation to provide such training will continue for a full twenty-four (24) months from the date of initial implementation of the training component. The State Department of Education shall have sole discretion to select and retain the services of an expert, consultant, advisor or other person whom it believes, in its judgment, to be qualified to design and implement such a training program. The training program shall consist of a one-hour presentation, either by live lecture or by videotape and may include supporting written materials. The program will be developed and shall be ready to be implemented as soon as reasonably possible, and no later than twelve (12) months after the date of approval of this decree by the Court.

## II. FACILITIES INFORMATION

20. In addition to providing training to capital planners, the State Department of Education also currently provides one-time, comprehensive training and certification to facility assessors in every school system. Facility assessors have the responsibility to assess the condition of buildings and condition of components of buildings. Every school system is required to submit an assessment database to the State Department of Education on an annual basis. The information contained therein is utilized in identifying and prioritizing capital projects as part of the ASCPP. Various facilities assessment reports can be generated at the state and local level for each system. In order to provide a means for the Party plaintiffs and the United States to be able to monitor new construction in the schools, the defendants agree to

provide reports upon request to counsel for the Party plaintiffs or the United States for their review on request. The State Department of Education may select the manner and format for delivery of the information requested and shall be permitted a full ten (10) business days to respond to any request for information. All requests for information must be in writing, must be reasonable and must not unduly burden the State Department of Education or otherwise pose an undue hardship on the Department. All obligations under this paragraph shall continue for a full twenty-four (24) months from the date of initiation of the collection and review process described in the paragraphs that follow.

### III. REPORTING, APPLICATION AND APPROVAL OF PROJECTS

21.  The parties intend for the construction approval process put in place by this Consent Decree to give appropriate current effect to this Court's directive that the State must ensure that school construction will, "judged in light of the capacity of existing facilities, the residence of the students, and the alternative sites available, . . . [and] consistent with the proper operation of the public school system as a whole, further the disestablishment of state-enforced or encouraged public school segregation and eliminate the effects of past state-enforced or encouraged racial discrimination in the State's public school system." Lee v. Macon County Bd. of Educ., 267 F. Supp. at 481.

22.  Alabama law currently requires specific approval by the State Department of Education of all construction of new schools and expansion of existing facilities. Ala. Code §§ 16-4-10, 16-13-12 (1975). Approval is typically sought when a project moves from the planning

stage to the actual implementation stage (i.e., acquiring site, hiring of architects and beginning construction).

23. The parties agree that requests for approval by Subsection 4 and Subsection 5 systems of the following construction projects shall be subject to the applicable provisions of paragraphs 24-27 of this decree, as provided therein:

(A) Construction of new schools;

(B) Expansion or modification of existing facilities that the local school system has reason to believe would likely have a significant effect on student populations, either by expanding or by reducing a facility's capacity. "Significant effect" is defined as increasing or decreasing the student population by more than 20%. A significant effect may occur from the proposed expansion or modification alone, or from the combined effect of the proposed expansion or modification along with any expansions or modifications in the five preceding years;

(C) Extensive, one-time comprehensive renovations to multiple components of a facility that extends the usable lifespan of a facility by more than fifteen (15) additional years, excluding repair to a roof made necessary because of leaks[5]; and

(D) Renovation or expansion of a facility that adds a major instructional or operational component not previously available at the facility, such as a media center, gymnasium, auditorium or cafeteria.

24. Requests for construction approval by Subsection 4 systems may be submitted in the customary format and manner contemplated by the ASCPP. After receiving any such request for a project described in paragraph 23 above, the State Department of Education agrees to

---

[5] The parties intended on including only extensive and comprehensive renovations in this category. Characteristics of those renovations include significant replacement or repair of multiple mechanical systems, retrofitting buildings, major structural repair and are accompanied by facilities closure. This category does not include repair or replacement of one component such as replacement of plumbing, electrical or mechanical systems, even if that repair or replacement contract extends the facility life by fifteen years or more.

provide notice of the request to counsel for the United States and the private plaintiffs. The notice shall consist of a brief description of the project and the school[s] affected.

25. Each Subsection 5 system requesting approval of a construction project described in subparagraphs (A) through (D) of paragraph 23 above shall provide the following information to the State Department of Education:

(A) A map (in either hard copy or electronic format) of the school system that shows the location of the proposed construction project and each school facility which currently enrolls students;

(B) The actual enrollment, by race, in each school facility which currently enrolls students, during the school year in which the request is submitted, and the total system-wide enrollment for each grade-level grouping (e.g., elementary, middle, and high school) operated by the local system;

(C) Information (either in narrative form or as answers to specific questions posed on a form to be developed by the Defendants and approved by the Plaintiff parties within one (1) year from the date this Consent Decree is entered) concerning the project's anticipated impact upon desegregation, including:

(1) The projected enrollment, in the school facility or facilities affected by the construction project, upon its completion, including an explanation of how students will be assigned to such facility or facilities; and

(2) Factors considered in planning the project, including (a) whether and if so, how, the objective of desegregation was considered; and (b) factors taken into account in selecting the location of the facility that is the subject of the construction project, as well as any alternative sites considered, and demographic information about such areas; and

(3) An explanation of the basis upon which the local system believes that the project will, to the extent feasible, "further desegregation and help to eliminate the effects of the previous dual school system" in its district, or the basis upon which the local system believes that the objective of desegregation cannot be met; and

    (4)    A certification executed by its Superintendent and by the Chair of its Board of Education, in a format to be developed by the State Department of Education, that it has complied in good faith with all requirements of any school desegregation order(s) that apply to the system.

26. Defendants shall require that, simultaneously with the submission of the information described above to the State Department of Education, each Subsection 5 system shall send a copy to counsel for the United States of America and for the private plaintiffs in this case.

27. After receiving any such request submitted by a Subsection 5 system, the State Department of Education may approve the proposed project only if it determines that such information (including the narrative or answers required by subparagraph (C) of paragraph 25 above) is not inconsistent with the local school board's conclusion that the project will, to the extent practicable, "further desegregation and help to eliminate the effects of the previous dual school system." The Department may request further information from the local system in order to make that determination; if it does so, the Department will make copies of any information or documents submitted to it in response to its request available to counsel for the other parties upon request. If any system submits with its request for approval an order from a court having jurisdiction over any desegregation lawsuit, wherein the Subsection 5 system is a defendant, approving the construction, the State Department of Education may consider said order as a conclusive determination that the project will "further desegregation and help eliminate the effects of the previous dual school system" and no further determination concerning desegregation shall be necessary.

28. Once initial approval by the State for a particular construction project has been secured, no additional request for approval need be made in the absence of modification of the original project or significant external changes (for example, population shifts or other demographic changes) that would alter the analysis of the project's impact on desegregation originally presented in the initial request.

29. Notice of approval (or disapproval) of the local system's application shall be provided to the attorneys for the United States of America and for the private plaintiff parties in this action. Except as described below, the determination of the Department shall not be subject to review.

30. The parties to this Consent Decree acknowledge that the obligations created herein and all obligations of state defendants do not modify or eliminate any obligations or responsibility of local educational agencies or other branches of state government under separate order of this or another federal court. Nothing in this consent decree shall be construed to prohibit separate independent action against a local educational agency under the United States Constitution or any state or federal law, statute, rule or regulation relating to facilities or race discrimination. Further, nothing in this consent decree shall be construed to preclude any Alabama local educational agency from being granted full unitary status prior to the expiration of this Consent Decree. No obligation or responsibility related to the State Department of Education expressed herein or in earlier court orders shall be enforced, except by order of this federal court.

31. In accordance with the preceding paragraphs, approval by the State Department of Education of a particular construction project proposed by a local school system shall not be a bar to further proceedings against the local school system challenging the project in a pending school desegregation action to which that system is a party.

32. If either of the plaintiff parties to this case conclude, based upon the results of a series of such proceedings during the term of this decree, that the State Department of Education has not conducted the review provided for herein with respect to construction projects, they may file a motion with the Court for modification of the decree to the extent necessary to correct the problem and provide guidance to the State Department of Education.

## DURATION AND TERMINATION OF CONSENT DECREE

33. The Court shall continue to retain jurisdiction of this matter to ensure full compliance with the terms and conditions of this decree until the date that is twenty-four months after either (a) the beginning of implementation of the training by the State Department of Education or (b) the beginning of implementation of the collection, review and approval process by the State Department of Education, whichever shall last occur. This date shall be referred to as the "projected termination date." The State Department of Education shall file a certification with the Court confirming the latter implementation date and thus establishing the projected termination date. On the projected termination date, this action shall be placed on the Court's administrative active docket. At any time prior to that date, any party may move the Court to reinstate the action to the active docket for resolution of any relevant issues and for the entry of

appropriate relief. If no such motion is filed prior to the projected termination date, the statewide facilities issues portion of this action shall be automatically dismissed with prejudice, in its entirety, as of that date, and this decree shall be forever terminated.

34.  Defendants shall pay counsel for the private plaintiffs' class, excluding counsel for the United States, a reasonable attorneys' fee and costs in connection with this action. Additionally, the parties agree that counsel for the private plaintiffs, excluding the United States, shall be provided reasonable attorneys' fees and costs incurred in monitoring compliance with this consent decree. The amount of attorneys' fees and monitoring fees to be paid shall be set forth in the document entitled "Attorneys' Fees Agreement" shall be executed by all parties and filed with the Court under separate cover. Monitoring fees shall be paid on the anniversary date of the Court's order approving this decree until the projected termination date. In the event that this decree is not terminated on that date, the party plaintiffs may appeal to the Court to extend the state's obligation to pay monitoring fees for some set period of additional time.

35.  This consent decree has been approved by the Governor of the State of Alabama, by the Attorney General of Alabama, and by the Alabama State Board of Education.

IT IS SO ORDERED on this _____ day of _____, 2006.

_____
MYRON H. THOMPSON
United States District Judge

APPROVED AS TO FORM AND CONTENT:

*/s/ Fred D. Gray*

FRED D. GRAY, SR
ERNESTINE S. SAPP
FRED D. GRAY, JR.
WALTER E. MCGOWAN
STANLEY F. GRAY
Gray, Langford, Sapp, McGowan, Gray & Nathanson
108 Eastside Street
Tuskegee, AL 36083-0239
Phone : (334) 727-4830
Fax    : (334) 727-5877 Fax
GRA 053

*/s/ Norman J. Chachkin*

THEODORE M. SHAW
Director-Counsel

NORMAN J. CHACHKIN
NAACP Legal Defense & Educational Fund, Inc.
99 Hudson Street, 16th floor
New York, NY 10013
Phone : (212) 965-2200
Fax    : (212) 219-2052
For Private Plaintiffs and Plaintiff-Intervenors.

LEURA GARRETT
United States Attorney

WAN J. KIM
Assistant Attorney General

_____
JEREMIAH GLASSMAN
PAULINE A. MILLER
United States Department of Justice
Civil Rights Division
Educational Opportunities Section
950 Pennsylvania Avenue, N.W.
PHB 4300
Washington, DC 20530
Phone : (202) 514-2179
Fax   : (202) 514-8337
AZ 5072
For Plaintiff-Intervenors.

_____
REGINALD L. SORRELLS (SOR002)
LARRY E. CRAVEN
Office of General Counsel
Alabama State Department of Education
5103 Gordon Persons Building
50 North Ripley Street
Montgomery, AL 36130
Phone : (334) 242-1899
Fax   : (334) 242-1982

_____
CONSTANCE S. BARKER
Capell & Howard P.C.
150 South Perry Street
P.O. Box 2069
Montgomery, AL 36102
Phone : (334) 241-8048
Fax   : (334) 241-8248

_____
WHIT COLVIN
Bishop, Colvin, Johnson & Kent
1910 First Avenue North
Birmingham, Alabama 35203
Phone : (205) 251-2881
Fax    : (205) 254-3987
(ASB # 3137-C51G)

For Defendants.