IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


ANTHONY T. LEE, et al.,            )
                                   )
       Plaintiffs,                 )
                                   )
UNITED STATES OF AMERICA,          )
                                   )
       Plaintiff-Intervenor        )
       and Amicus Curiae,          )
                                   )
NATIONAL EDUCATION                 )
ASSOCIATION, INC.,                 )
                                   )
       Plaintiff-Intervenor,       )
                                   )
       v.                          )    CIVIL ACTION NO.
                                   )    3:70cv846-MHT
MACON COUNTY BOARD OF              )        (WO)
EDUCATION, et al.,                 )
                                   )
       Defendants.                 )

OPINION

In this longstanding school desegregation case, the

plaintiffs, a class of black students, obtained relief

from race discrimination in the operation of a de jure

segregated school system.  The defendants are the Macon

County  Board  of  Education  and  its  members  and

superintendent, as well as the Alabama State Board of Education, its members, the State Superintendent of Education and the Governor of Alabama. The Macon County Board of Education and its members and superintendent have moved for declaration of unitary status and termination of this litigation. Based on the evidence presented, the court concludes that the motion should be granted and that this litigation should be terminated as to the Macon County Board of Education and its members and superintendent.

## I.  BACKGROUND

### A.  Early Litigation

This case began in 1963 when several black students and their parents sued the Macon County Board of Education and its superintendent seeking relief from the continued operation of a racially segregated school system. On July 16, 1963, the United States was added as plaintiff-intervenor and amicus curiae in order that the

public interest in the administration of justice would be represented. <u>Lee v. Macon County Board of Education</u>, 267 F.Supp. 458, 460 (M.D. Ala. 1967) (three-judge court) (per curiam). In a hearing before a single-judge court, the Macon County Board was enjoined to make an immediate start to desegregate its schools "without discrimination based on race or color." <u>Lee v. Macon County Board of Education</u>, 221 F.Supp. 297, 300 (M.D. Ala. 1963).

After actions by the State of Alabama to prevent implementation of this order, the Macon County plaintiffs filed an amended and supplemental complaint in February 1964 alleging that the Alabama State Board of Education, its members, the State Superintendent, and the Governor as president of the state board, had asserted general control and supervision over all public schools in the State in order to maintain a <u>de jure</u> segregated school system. The court found that it was the policy of the State to promote and encourage a dual school system based on race, and the state officials were made defendants.

3

Lee v. Macon County Board of Education, 231 F.Supp. 743
(M.D. Ala. 1964) (three-judge court) (per curiam).  In
subsequent orders, the Lee Court ordered the State
Superintendent of Education to require school districts
throughout the State to desegregate their schools.  Lee
v. Macon County Bd. of Educ., 292 F.Supp. 363 (M.D. Ala.
1968) (three-judge court) (per curiam); Lee v. Macon
County Bd. of Educ., 267 F.Supp. 458 (M.D. Ala. 1967)
(three-judge court) (per curiam).  On June 24, 1970, the
three-judge court in Lee transferred the jurisdiction
over 35 school districts involved in the Lee litigation,
including the Macon County School District, to a single
district judge of the United States District Court for
the Middle District of Alabama, where the school
districts were located.

Over the next several years, this court granted
several requests by the Macon County School Board to
alter and change the boundaries of the school district
lines or to alter school plans.  In 1991, the board moved

to consolidate all of the high school grades in Macon County into a single high school facility in Tuskegee. A group of students, parents and others who opposed the closure of the high school at Notasulga were granted leave to intervene. At that time, the student enrollment at Notasulga High School was 42 % white. The consolidated high school was projected to be 94 % black. The intervenors objected to the closure of the only nonracially identifiable high school in the district. On August 1, 1991, Judge Robert E. Varner of this court denied the board's petition as it applied to the Notasulga High School, but granted the petition in all other respects. That decision was affirmed on appeal. Lee v. Macon County Bd. of Educ., 970 F.2d 767 (11th Cir. 1992), reh'g granted and opinion vacated, 987 F.2d 1521 (11th Cir. 1993), aff'd by an equally divided court, 995 F.2d 184 (11th Cir. 1993).

On August 19, 2005, this court granted the board's motion to close two elementary schools and open a new

elementary school in the Tuskegee area. Notasulga students were not affected. A motion to intervene opposing the closure of South Macon Elementary School was denied.


## B.  School District Profile

The Macon County School District is the only public school system in Macon County. As noted above, according to 2000 census data, Macon County has a population that is 84.6 % black. The Macon County Board of Education is comprised of five board members, two black females and three black males. The Superintendent of the Macon County schools is a black male.

There are seven schools in the district, including Lewis Adams Early Childhood Center, George Washington Carver Elementary School, Tuskegee Public Elementary School, Tuskegee Institute Middle School, Booker T. Washington High School, Deborah Cannon Wolfe School, and

Notasulga High School.  All of the Macon County schools are accredited by the Southern Association of Colleges and Schools.  The budget of the Macon County schools is almost $ 30 million per year.

During this 2005-2006 school year, 3,441 students are enrolled in the district, 3,368 or 98 % of whom are black.  Almost all of the white students attend Notasulga where they now make up 14 % of the student enrollment. The Macon County School System employs 242 certified staff members, of whom 96 % are black.  Another 168 employees are non-certified staff, of whom 95 % are black.

### C.  State-wide Issues

Over the course of years, as litigation affecting the individual school districts was dealt with by the courts as separate matters, the state defendants (that is, the Alabama State Board of Education, its board members, the State Superintendent of Education, and the Governor of

Alabama) did not participate in litigation affecting the Macon County school system.  The question arose as to whether the state defendants were even parties in the local off-shoots of the <u>Lee</u> cases.  Previous rulings, particularly <u>Lee v. Macon County Board of Education</u>, 267 F.Supp. 458 (M.D. Ala. 1967) (three-judge court) (per curiam), <u>aff'd sub nom</u>.  <u>Wallace v. United States</u>, 389 U.S. 215 (1967), held that the state defendants were responsible for the creation and maintenance of segregated public education in the State of Alabama.  The court found that state officials had "engaged in a wide range of activities to maintain segregated public education ... [which] controlled virtually every aspect of public education in the state." <u>Lee</u>, 267 F.Supp. at 478.

This court subsequently affirmed that, despite cessation of participation by the state defendants when the individual district cases were transferred, the state defendants continue as parties in not only the state-wide

litigation, but in all the off-shoot cases.  <u>Lee v. Lee
County Board of Education</u>, 963 F.Supp. 1122, 1124, 1130
(M.D. Ala. 1997).   The parties identified two issues
remaining  in  the  state-wide  litigation,  'special
education' and 'facilities.'  The state-wide issues were
resolved, and orders adopting the consent decrees were
entered on August 30, 2000, and April 20, 2006.  <u>Lee v.
Butler County Board of Education</u>, 2000 WL 33680483 (M.D.
Ala. 2000); <u>Lee v. Lee County Board of Education</u>, 2006 WL
1041994 (M.D. Ala. 2006).

### D.  Motion for Declaration of Unitary Status

In an order dated June 27, 2005, this court stated
that "the parties should now move toward 'unitary status'
for this school system and for the termination of this
litigation."  The parties proposed a period of informal
discovery.  In a status conference on October 24, 2005,
the parties advised the court that the board should
proceed with its motion for declaration of unitary status

9

which was filed on October 28, 2005.  A fairness hearing
was set for December 19, 2005, and required the board to
give all plaintiff class members appropriate notice of
the motion as well as procedures for lodging objections.

After the court approved the notice form, the board
published, in the local newspaper over a three-week time
period, notice of the proposed termination of this
litigation and the date of the fairness hearing as well
as historical information about the case.  The notice
also provided procedures for class members and interested
persons to file comments and objections with the court
regarding the proposed dismissal and where such
information could be obtained.  Documents about the
process were made available at the school district office
from November 3, 2005, through December 16, 2005.  Forms
for objections and comments were made available at the
district office and at the principal's office at each
Macon County public school.  Actual notice was provided
to each parent or guardian of a student enrolled in the

Macon County School District.  On December 19, 2005, the court held a fairness hearing on the motion for declaration of unitary status and termination.

The court concludes that the Macon County Board of Education complied with the directives of the court in providing adequate notice of the proposed dismissal to class members as well as to the community.  Fed. R. Civ. P. 23(e).


## II.  DISCUSSION

### A.    Standards for Termination of a School Desegregation Case

It has long been recognized that the goal of a school desegregation case is to convert promptly from a de jure segregated school system to a system without 'white' schools or 'black' schools, but just schools.  Green v. County School Bd. Of New Kent, 391 U.S. 430, 442 (1968). The success of this effort leads to the goal of ultimately returning control to the local school board since "local autonomy of school districts is a vital

11

national tradition." Freeman v. Pitts, 503 U.S. 467, 490 (1992) (quoting Dayton Board of Education v. Brinkman, 433 U.S. 406, 410 (1977)). Returning schools to the control of local authorities "at the earliest practicable date is essential to restore their true accountability in our governmental system." Id.

The ultimate inquiry concerning whether a school district operating under a school desegregation order to dismantle a de jure segregated school system should be declared unitary is whether the school district has complied in good faith with the desegregation decree, and whether the vestiges of prior de jure segregation have been eliminated to the extent practicable. NAACP, Jacksonville Branch v. Duval County School Board, 273 F.3d 960, 966 (11th Cir. 2001) (citing Missouri v. Jenkins, 515 U.S. 70, 88 (1995), and quoting Freeman v. Pitts, 503 U.S. 467, 492 (1992)); see also Manning v. School Board of Hillsborough County, 244 F.3d 927, 942 (11th Cir. 2001), cert. denied, 534 U.S.824 (2001);

Lockett v. Board of Education of Muscogee County), 111
F.3d 839, 843 (11th Cir. 1997).   Regardless, "[t]he
measure of a desegregation plan is its effectiveness."
Davis v. Board of School Commissioners, 402 U.S. 33, 37
(1971).


            B.   December 19, 2005, Fairness Hearing

     After the Macon County Board of Education and its
members and superintendent filed their motion for
declaration of unitary status and termination of this
litigation, the court required publication and notice of
the proposed dismissal, scheduled a fairness hearing, and
established procedures for filing comments and
objections.   Ten comments were filed with the court, all
from the Notasulga community, expressing concern
regarding possible closure of the Notasulga school and
the loss of the only integrated school in the district.

     Two members of the Notasulga community testified at
the hearing, both of whom had filed written comments.

The first was Frank Tew, Mayor of the Town of Notasulga. He testified about the importance of the school to the community and requested that any order dismissing the case include a provision that the Notasulga school remain open.

The second community member to testify was Robert Anderson, the principal at the Notasulga school from 1971 to 2002, whose extraordinary personal commitment to desegregation led to the successful integration of the school. Principal Anderson objects to unitary status and dismissal of this case because he believes that judicial supervision is needed to ensure that the Notasulga school remains open, particularly the high school grades. He stated that, if the community knew that the high school grades would remain at Notasulga, enrollment would stabilize. Student enrollment has declined over the past few years, particularly for white students.

Principal Anderson also stated that he suspected illegal interdistrict transfers were occurring because

school enrollment had declined quickly. Upon questioning, he indicated that he thought Macon County students were enrolling in schools in neighboring counties, but he was unable to provide specific details or the names of any students who are living in Macon County and attending a public school in another district.

The final witness was the Superintendent of the Macon County School District, Willie C. Thomas, Jr., who has served in the position for three years. He gave testimony regarding the nondiscriminatory operation of the school system and recent new school construction as well as to the enrollment and census information for the county. Superintendent Thomas testified that, on November 30, 2005, he sent a letter to parents of students in the Notasulga community stating that there are no current plans to change the grade configuration at the Notasulga school and that the five-year capital plan indicates that facility renovations at the school are district priorities over the next two to four years. He

15

also testified that district officials suspected that illegal interdistrict-student transfers may have occurred and had investigated various reports of such transfers. However, he was unable to state the results of these investigations nor was he able to respond with any specificity to the transfer allegations made by Principal Anderson.

Counsel for the plaintiff parties cross examined these witnesses and addressed the issues raised in the comments and in the testimony of the witnesses, particularly regarding the student-transfer allegations. At the conclusion of the hearing, it was determined that the Macon County School Board should investigate the interdistrict-transfer allegations.

### C. Post-Hearing Investigation

The Macon County School District has experienced a decline in student enrollment over the past several years, and particularly during the past year. Following

16

the fairness heari g, the board conducted an investigation to determine if this decrease is attributable to improper student transfers--that is, whether students residing within Macon County are attending public schools outside of the Macon County School System and, if so, whether these transfers impede desegregation.

The investigation by the school district staff established that the decline in student enrollment is attributable to several factors. A large number of Macon County students, many of whom are African-American, attend private school, are home schooled, or have dropped out of school. A number of students have moved out of the county. Of the 24 students who withdrew from the Macon County system and transferred to another public school system in Alabama this school year, four are white. The board determined that these students are no longer residing in the county. Based on the board's investigation, it does not appear that the decline in

17

student enrollment at the Notasulga school is attributable to improper student transfers.

## D. Compliance Efforts

Under the <u>de jure</u> system, the board assigned students and employees to schools based on their race. Schools are now operated on a nondiscriminatory basis. The provision of transportation services, the operation of facilities, and the assignment of students and staff are made without regard to race. Extracurricular activities are provided on a nondiscriminatory basis. The board advertises for employees nationally, state-wide, and locally. No person is denied employment, or excluded from participation, or is denied benefits of, or is subjected to discrimination in any program or activity on the basis of disabil ty, sex, race, religion, national origin, color or age.

### III.   CONCLUSION

On the basis of the record evidence, witness testimony, and averments of counsel, the court finds that the Macon County Board of Education and its members and superintendent have met the standards entitling the school district to a declaration of unitary status and termination of this litigation.

The Macon County School Board has fully and satisfactorily complied with the orders of this court. The vestiges of the prior <u>de jure</u> segregated school system have been eliminated to the extent practicable. The court also finds that the board and its members and superintendent have demonstrated a good-faith commitment to the whole of the court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in this school system in the first instance. Through their compliance with the court's orders over the years, they have demonstrated their commitment to the operation of a school system in compliance with the Constitution.

The plaintiff parties have succeeded in the task they began decades ago to seek the end of the de jure system of school segregation in Macon County.  This lawsuit sought to bring the district into compliance with the constitutional requirement of equal protection under the law, and the court states today that they have succeeded. NAACP, Jacksonville Branch v. Duval County Schools, 273 F.3d 960, 976 (11th Cir. 2001).

Therefore, with the judgment the court will enter today, control over the Macon County School System is returned to the Macon County Board of Education and its members and superintendent.  The motion for declaration of unitary status and termination of this litigation filed by the Macon Board and its members and superintendent is granted, all outstanding orders and injunctions will be dissolved, and this litigation partially dismissed as to the Macon County School Board and its members and superintendent.  However, the state defendants are not dismissed, and the orders dealing with

the state-wide 'special education' and 'facilities'
issues are not dissolved.

    DONE, this the 22nd day of May, 2006.


                        /s/ MYRON H. THOMPSON
                    UNITED STATES DISTRICT JUDGE